John Memolo v. Commissioner.
Memolo v. Commissioner
Docket Nos. 9224, 24018.
United States Tax Court
1952 Tax Ct. Memo LEXIS 288; 11 T.C.M. (CCH) 246; T.C.M. (RIA) 52075; March 20, 1952
*288 Petitioner was appointed counsel in 1935 for the receivers of Williamsport Wire Rope Company. A sale of the property to Bethlehem Steel Company was arranged in 1937 and was approved by the Federal District Court, with the requirement that Bethlehem pay administration expenses of the receivership. Petitioner and others received large sums under the guise of administration expenses. In 1945 petitioner was convicted of income tax evasion and conspiracy to obstruct justice and to defraud the United States. Respondent determined deficiencies in tax for 1938, 1939 and 1940 for failure to report as income amounts which petitioner was shown to have received, and determined fraud penalties. Petitioner contends that these amounts were held for others to whom he subsequently paid them, but produced no adequate records to support his statements. Held, petitioner has not shown error in respondent's determination. Held, also, respondent has shown that petitioner's returns were fraudulent with intent to evade tax. O. John Rogge, Esq., and Herbert J. Fabricant, Esq., for the petitioner. W. Morgan Hunter, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Petitioner reported net income on his original returns for the calendar years 1938 and 1939, of $22,951.74, and $8,492.97, respectively. In January 1944, after respondent had commenced an investigation of petitioner's returns for 1938 and 1939, petitioner filed amended returns for those years reporting additional income. Respondent asserted deficiencies for those years upon determining that petitioner had received income in excess of the amounts reported, and asserted penalties for fraud with intent to evade tax. Petitioner assigns error in respondent's *290 determinations and pleads the bar of the statutory period of limitations upon assessment of these deficiencies. Petitioner's return for 1940 reported net income of $2,833.70. Respondent determined the correct net income to be $25,063.65, the principal addition being income from profession previously unreported. A fifty per cent penalty for fraud with intent to evade tax was asserted. Petitioner assigns error in respondent's determinations. The deficiencies and penalties determined were as follows: Deficiency
50% Penalty
1938
$68,544.00
$36,058.07
1939
6,121.69
6,346.01
1940
3,592.31
1,796.16
The issues are whether petitioner was in receipt of unreported income in the taxable years in amounts determined by respondent and whether petitioner's returns for the years were false and fraudulent with intent to evade tax. Findings of Fact A partial stipulation of facts was filed and the stipulated facts are so found. Petitioner resides in Lackawanna County, Pennsylvania. He was born in 1885 and was engaged in the practice of law from 1909 to 1946. He filed timely income tax returns for the years 1938, 1939 and 1940 with the collector of internal revenue *291 at Scranton, Pennsylvania, and filed supplemental returns on January 18, 1944, for the years 1938 and 1939. In 1932 Guaranty Trust Company of New York brought a creditors' bill against Williamsport Wire Rope Company (herein referred to as "Williamsport") in the United States District Court for the Middle District of Pennsylvania, and Robert Gilmore, Charles M. Ballard and Delmar K. Townsend were appointed receivers during the pendency of the suit. Oliver J. Decker, a Williamsport attorney, was appointed counsel to the receivers. The case was assigned to Albert W. Johnson, District Judge, who thereafter conducted all proceedings in the Middle District Court relating to Williamsport. On May 29, 1935, Judge Johnson entered an order appointing petitioner as associate and additional counsel for the receivers of Williamsport and fixing his compensation at $500 per month, which was the rate then paid Decker. On August 23, 1935, Judge Johnson, on petition by Decker and Memolo, entered an order increasing their compensation to $1,000 per month, on account, effective July 1, 1935. On January 13, 1936, after hearing upon notice to all parties in interest, Judge Johnson entered an order *292 vacating the order of August 1935, fixing the compensation of Decker at $500 per month, on account, effective January 15, 1935, and providing that the compensation of Memolo should be fixed at the termination of the receivership. On September 14, 1936, National City Bank of New York, trustee of the mortgage securing the Williamsport mortgage bonds, filed a petition for leave to file a bill of foreclosure on the mortgage and for a rule to show cause why the receivers of Williamsport should not be made parties to the foreclosure. On December 10, 1936, a consent order was signed, granting leave to file the foreclosure bill with the receivers as defendants. On December 28, 1936, the bill to foreclose was filed, and on March 16, 1937, Judge Johnson ordered consolidation of the foreclosure proceeding and the receivership. On April 12, 1937, Judge Johnson entered the final decree of foreclosure and sale, ordering sale of the properties of Williamsport on May 12, 1937. The sale was actually held on May 27, 1937, after postponement to allow the Court to consider objections by representatives of the preferred and common stockholders of Williamsport. At the sale, a representative of Bethlehem *293 Steel Company (herein referred to as "Bethlehem") was the only bidder, offering $3,300,000 plus payment of administration expenses as provided by the decree. On July 27, 1937, Judge Johnson entered a final decree confirming the sale to Bethlehem and directing execution and delivery of deeds. Representatives of the stockholders appealed, and Judge Johnson's decree was affirmed by the Court of Appeals for the Third Circuit on May 3, 1938. On August 13, 1937, Judge Johnson entered an order, appointing John W. Crolly a Special Master to make disposition of the assets of Williamsport and to audit the receivers' accounts. On August 21, 1937, Crolly conveyed to Bethelehem title to the Williamsport assets. On September 4, 1937, Judge Johnson entered an order appointing Martin Memolo, brother of petitioner, an agent of the Court to supervise and oversee the operations of the properties of Williamsport, subject to the right of purchaser to operate such properties, pending the outcome of the appeal to set aside the sale, and to report from time to time thereon. On May 31, 1938, following the affirmance of the sale by the Court of Appeals, Judge Johnson entered an order terminating the duties *294 of Martin Memolo under the order of September 4, 1937 and providing that fees for his services should be paid by Bethlehem. By three separate orders in 1937, Judge Johnson had decreed that Martin Memolo be paid the respective amounts of $500, $4,500 and $2,000 by Bethlehem out of funds received from Williamsport. On July 13, 1938, Oliver J. Decker and Eleanor D. Decker (his wife) executed a release for and in consideration of the payment of $5,000, discharging Bethlehem and the receivers from all claims for services, expenses or fees performed or expended by Decker in the receivership. In connection with the acquisition of Williamsport Wire Rope Company, checks were drawn and paid by Bethlehem as follows: Date
Drawn
Payee
Amount
10/15/37
Martin Memolo
$ 500.00
12/10/37
Martin Memolo
4,500.00
1/15/38
Martin Memolo
2,000.00
6/15/38
Martin Memolo
25,000.00
7/12/38
Oliver J. Decker and Eleanor
D. Decker
5,000.00
12/ 7/38
John Memolo
5,000.00
12/16/38
John Memolo
36,000.00
12/16/38
John W. Crolly
30,850.01
12/16/38
Martin Memolo
34,990.00
12/16/38
E. J. Maloney & Co.
31,075.00
1/12/39
John Memolo
40,084.99 Each of the above *295 checks was paid in the year drawn. The check dated June 15, 1938 was cashed at the Fidelity Deposit & Discount Bank of Dunmore, Pennsylvania, on July 22, 1938, by Martin F. Memolo, son of petitioner. The cash was placed in petitioner's safe deposit box in Scranton. Petitioner used $25,000 from the funds in this box to enable his son to invest in a radio station. The checks dated December 16, 1938 and drawn to the order of Martin Memolo and John Memolo were endorsed by the payees and deposited to the credit of petitioner in the Chase National Bank of New York City, on December 17, 1938. The check dated January 12, 1939 was deposited January 13, 1939 to the credit of petitioner in the same account with the Chase National Bank of New York City. On August 4, 1939, petitioner wrote the Chase National Bank, requesting shipment of $110,000 in one thousand dollar bills. This amount was charged against petitioner's account on August 8, 1939 and a special messenger deliver the currency to him in Scranton on that date. Petitioner produced no books or records showing the fees or other amounts he received from the Williamsport transaction. He kept a ledger sheet to record his expenses. *296 He was paid directly fees of $5,000 and $36,000 in 1938 and $40,084.99 in 1939. The last two amounts were not reported as income on his tax returns. Petitioner's brother Martin turned over to petitioner the amounts of $25,000 and $34,990 paid to Martin Petitioner was not indebted to Martin at that time. The money thus turned over was thereafter under petitioner's control and disposition. Petitioner gave Martin no note or other evidence of indebtedness. Petitioner had a ledger sheet recording amounts of less than $1,000 as loans due from Martin. The amounts of $25,000 and $34,990 were not shown on that record. Martin did not have access to petitioner's safe deposit box. Martin died April 24, 1943 with a net estate of $209.36. The petitioner made the arrangements whereby Maloney was appointed the accountant to audit the receivers' accounts in the Williamsport matter from September 1932 to August 1937, and to file a report thereon to the Court. The appointment of Maloney was made by an order of Crolly dated August 20, 1937, but actually issued in July 1938 and confirmed by Judge Johnson on July 9, 1938 and filed with the Clerk of the Court on that date. Maloney's services extended *297 from July 1938 to November 1938. After an audit and a final report was filed, Maloney prepared a lengthy bill or statement for the payment of his services amounting to $31,075, and at the petitioner's direction itemized services as having been performed over a longer period of time, commencing in 1937, than the time actually worked. Subsequently, the petitioner directed Maloney to submit a condensed bill for the same amount. On or about December 20, 1938, the petitioner had Maloney acknowledge receipt of a check from Bethlehem for $31,075 and endorse the Bethlehem check and sign a bank signature card, deposit slip, and counter check to the order of cash in that amount. Petitioner gave Maloney $1,200 in cash for his accounting service. In April 1939, petitioner gave Maloney a personal check in the amount of $3,971.21 to pay Maloney's tax for 1938 on his income, including the $31,075. The balance of $25,903.79 was kept and used by petitioner for his own purposes. John W. Crolly was appointed a Special Master to close the sale of Williamsport to Bethlehem. For these services, Crolly was paid $30,850.01 on December 16, 1938, by Bethlehem. The petitioner received at least $14,000 of the *298 proceeds of the Bethlehem check to Crolly, and before the Grand Jury in 1945 stated that he received all the proceeds. Petitioner gave Crolly a check in the amount of $1,500 or $1,600 for the purpose of paying Crolly's income tax for 1938. Crolly was an office associate of petitioner. Crolly died in 1945. When petitioner received $110,000 in currency from the Chase National Bank, he placed it in his safe deposit box in Scranton. The envelope in which the currency was kept, received in evidence here as Exhibit 13, bears notations purporting to record withdrawals for various purposes. Among these is one indicating a withdrawal of $30,000 on November 12, 1940 for Decker, and notations dated January 14, 1942, and February 5, 1942, indicating payments of $17,000 on each date to Martin Memolo. Petitioner prepared an income tax return for Martin for the year 1938 which was signed by Martin on February 16, 1942, and filed February 24, 1942, reporting receipt from Bethlehem Steel Co. of $59,990 as compensation for services. Petitioner paid the tax thereon. Special Agent Wade and Internal Revenue Agent Naftulin originated an investigation of petitioner's income tax returns in October 1941. *299 Petitioner did not mention to either of them any arrangement whereby there was to be a splitting of fees between petitioner and Jacob Greenes or that petitioner had split fees with Decker, and although requested, the petitioner did not produce any records relative to fees received from Bethlehem or Williamsport. Petitioner failed to disclose to the revenue agents the fact that he had paid the income tax of Maloney. This payment was concealed by erasing Maloney's name from the check stub for the check in the amount of $3,971.21. Decker died in May 1943. In May 1944 petitioner asserted that he had split fees with Decker by paying over to him in 1939, $30,000 in cash. Petitioner was indicted on two counts for income tax evasion, one for the taxable year 1938 and the other for the taxable year 1939, and after a jury trial, was convicted on both counts in March 1945. Thereafter, the petitioner appealed and sought a new trial. The conviction was affirmed and petitioner served his sentence at Lewisburg Penitentiary. The petitioner was also indicted and tried on an indictment of conspiracy corruptly to endeavor to influence, obstruct and corruptly to influence and impede the administration *300 of justice in proceedings before the District Court of the United States for the Middle District of Pennsylvania and to defraud the United States, in relation to the Williamsport matter. After a trial the petitioner was convicted, which conviction was sustained on appeal. Petitioner with intent to evade tax failed to keep books and records for the taxable years 1938, 1939 and 1940, as required by the Internal Revenue Code and the regulations promulgated thereunder. Petitioner understated the amount of his net income for the calendar year 1938 by reason of his failure to report in his tax return for such year the receipt of the following items: Additional net profits from law prac-
tice
$ 20,064.00
Payments received from: Martin Memolo
$59,990.00
Edward G. Maloney
25,903.69
John W. Crolly
30,850.01
116,743.70
$136,807.70
Petitioner understated the amount of his net income for the taxable year 1939 by reason of his failure to report in his income tax return additional net profit in the amount of $57,629.45 realized by him from his law practice during said year. Petitioner understated the amount of his net income for the taxable year 1940 *301 by reason of his failure to report in his income tax return additional net profit in the amount of $22,220.95 realized by him during said year. Petitioner's income tax returns for the taxable years 1938, 1939, and 1940 were false and fraudulent in that the petitioner knowingly and willfully and with intent to evade tax, understated his income for those years by failing to report the amounts of $136,807.70, $57,629.45 and $22,220.95, respectively. At least part of the deficiency in income tax asserted against the petitioner for each of the years 1938, 1939, and 1940 is due to fraud with intent to evade and defeat tax. Petitioner, by reason of his fraudulent acts with intent to defraud the United States of Lawful revenue, is liable for the fifty per cent addition to tax with respect to the taxable years 1938, 1939, and 1940, in the respective amounts of $36,058.07, $6,346.01 and $1,796.16. Opinion These proceedings were heard December 14 and 15, 1950. Petitioner was allowed till February 19, 1951 to file his original brief. This date was finally put forward to July 24, 1951, after several requests for extensions of time by petitioner. No brief on behalf of petitioner has been *302 filed. This adds to the difficulties of the Court not only in finding the facts in a complicated case but also in ascertaining the petitioner's contentions, except as they appear from the issues raised in his petitions and the explanations given in his testimony. The burden is upon petitioner to show that respondent erred in determining the deficiencies in tax. Petitioner did not produce books or records from which the taxes reported on his returns could be verified. Petitioner had been engaged in the practice of law from 1909 and for many years was admitted to practice before the Treasury Department. He was undoubtedly aware of the statutes and regulations relating to the keeping of records for tax purposes. His failure to maintain records was deliberate and with a purpose. Respondent has shown that petitioner received large amounts which were not reported on his returns. Petitioner's purported explanation is that much of the money received was held for other persons and was not income to him. Petitioner was involved in the matter of the receivership of the Williamsport Wire Rope Company and the sale under foreclosure whereby the assets of Williamsport were acquired by Bethlehem *303 Steel Company for a price of $3,300,000 plus the expenses of the receivership. Petitioner was appointed by Judge Johnson as associate counsel for the receivers. Petitioner and certain other persons effected arrangements for the transfer of the Williamsport properties to Bethlehem and petitioner appears to have been the "pay-off" man of the group which planned and carried out the transaction, securing payment of a substantial amount as "administration expenses" of the receivership. To accomplish this purpose, Martin Memolo, Crolly and Maloney were appointed to perform certain nominal or unnecessary services and large fees were paid for these services, the bills being approved by petitioner and the checks sent to him. Petitioner attempted to conceal some of these payments by transfers of money in cash and by failing to keep records or by altering or destroying records of certain receipts and payments. A large part of the money was kept by petitioner and some was transferred to other conspirators through Jacob Greenes, who appears to have been a "go-between" for Donald Johnson, a son of the Judge. Petitioner and others were later convicted of conspiracy corruptly to impede the administration *304 of justice and to defraud the United States. Petitioner has told under oath the story of the Williamsport transaction on several occasions; on April 10, 1940, at a hearing before an Assistant United States Attorney in New York City; on May 29, 1944, at Scranton before an Internal Revenue Agent and a Special Agent of the Bureau of Internal Revenue; in February 1945 before a grand jury; in May 1945 in his own trial on charges of evasion of federal income taxes; and in July 1945 before a subcommittee of the Committee on the Judiciary of the House of Representatives investigating the official conduct of Judge Johnson. He testified again in the hearing of this case. His testimony is in several instances inconsistent and contradictory. Respondent has shown that in 1938 petitioner received checks payable to himself in the amounts of $5,000 and $36,000 and that he received the proceeds of checks payable to Martin Memolo in the amounts of $25,000 and $34,990 and a check payable to Maloney in the amount of $31,075. In petitioner's testimony before the Grand Jury he admitted receiving in 1938 the entire proceeds of the Crolly check for $30,850. In the hearing of this case he admitted receiving *305 at least $14,000 of the Crolly check. In 1939 he received a check for $40,084.99. His return for 1938 included items of $5,000 and $25,000. The other amounts were not reported on his returns. Also, respondent determined that petitioner had more income from his law practices in 1938, 1939, and 1940, than was reported on his returns. Petitioner's present explanation is that he was holding his brother's money for safekeeping, that he was obligated to pay over to Decker a portion of the undercover fees and that he was supposed to split fees with Crolly; also, that he had turned over some $34,000 to Greenes and was trying to recover that amount from the other fees in order to be "made whole", whereupon he intended to get out of the entangling affair. There are several difficulties with this explanation. For one thing, it has been changed or revised in the several tellings of the story. When petitioner testified in 1940 he asserted that he had received about sixty or seventy thousand dollars out of the Williamsport transaction and at that time held $117,500 in his safe deposit box. He made no mention of holding money for Martin Memolo or Decker or Crolly. In 1941 he was questioned by *306 agents of the Bureau of Internal Revenue, but did not give the explanation now offered. In February 1942 he prepared a return for 1938 for his brother, showing receipt of $59,990 from Bethlehem as compensation for services. Martin signed and filed the return and petitioner paid the tax. This was obviously an attempt to conceal petitioner's liability for tax on the money he had received through checks payable to Martin. Martin died in 1943 as did also Oliver Decker. In 1944 petitioner asserted that part of the money was held for Decker, that he settled with Decker in the fall of 1939 by paying $30,000 in cash, and that Decker had wanted more. He said Decker was supposed to receive half the attorneys' fees. He took no receipt from Decker. He denied that he had had any transaction with Maloney in the Williamsport case, and denied that he received any part of Maloney's fee or that he had given Maloney a check for $3,971.21 or any other amount in April 1939. He did not mention Greenes. Crolly died in 1945. In February 1945 petitioner admitted the Maloney transaction and for the first time said he had been holding $30,000 for Crolly. He also said he had settled with Greenes in 1939. In May *307 1945 he testified that he had settled with Decker in 1940 or 1941 by paying him $30,000. Also, that he regarded the proceeds of the Maloney check as belonging to Greenes, but as Greenes "owed" petitioner $34,000 for advances, petitioner "repaid himself" out of these proceeds and proceeds of the Crolly check. He stated then that he had records of all transactions but had thrown them away after all settlements were made. The testimony before the subcommittee of the Committee on the Judiciary contains some further variations. Petitioner for the first time indicated that Judge Johnson knew of the conspiracy. He said the Judge told petitioner to kick back more than fifty per cent and to pay over the remainder to him (the Judge), not to Greenes. It appears from these statements that petitioner's story was revised upon the death of Decker and again upon the death of Crolly. After each of these events petitioner asserted that some of the money had been held for that person in 1938 and was ultimately paid him in 1939 or 1940. Petitioner's testmony concerning the Maloney transaction underwent a decided change between May 1944 and February 1945, from a complete denial of any transaction to *308 an admission of the deal. Under these circumstances we are unable to give credence to petitioner's uncorroborated statements that the large amounts he received were held by him for Martin Memolo, Decker, Crolly, or Greenes and therefore did not constitute income to petitioner. His failure to maintain records to verify his statements is of his own volition and undoubtedly was based upon the hope that the transactions would not come to light. Since the respondent has established petitioner's receipt of these amounts and petitioner has not met the burden of showing that they were not income to him, we must sustain the deficiencies determined as to 1938 and 1939. The understatement of petitioner's professional income in 1940 exceeded $20,000. No evidence was offered to explain the omissions of 1940 income and we may assume the assignments of error with respect to the deficiency for that year are abandoned. The burden is upon the respondent to prove that petitioner's returns were false and fraudulent with intent to evade tax. Section 112, Internal Revenue Code. Respondent has shown that for each of the taxable years before us petitioner omitted to report substantial *309 amounts of the income from his practice. Also, petitioner admitted that he kept for his own use over $25,000 of the Maloney payment in 1938 and that this was not reported on his return for that year or any year. He admitted receiving $40,000 in 1939 which was not reported on his return. He omitted more than $20,000 on his return for 1940 which was shown to have been received. His explanations of these omissions to return income are not adequate or convincing. He was convicted of income tax evasion with reference to 1938 and 1939. This is sufficient to justify the civil penalties for fraud in those years, Thomas J. McLaughlin, 29 B.T.A. 247 We find that petitioner's returns for 1938, 1939, and 1940 were false and fraudulent with intent to evade tax. In view of this conclusion the statute limiting the time within which assessment of the deficiencies for 1938 and 1939 may be made is not applicable. Section 276(a), Internal Revenue Code. Decision will be entered for the respondent.